IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYNE RESPER,                           *
        Plaintiff,
    v.                                *     CIVIL ACTION NO. PJM-13-3296

OFFICER ADKINS, et al.,                 *
        Defendants.
                                 ***

**MEMORANDUM OPINION**

Pending is a Motion to Dismiss, or in the Alternative Motion for Summary Judgment filed by Defendants Warden Bobby P. Shearin and C.O. II. Randy Adkins. ECF No. 13. Plaintiff has responded. ECF No. 24.[1] Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion will be granted.

**Background**

Plaintiff Wayne Resper, an inmate currently held at the Western Correctional Institution ("WCI"), filed the instant civil rights complaint, alleging that on November 3, 2010, while housed at the North Branch Correctional Institution's ("NBCI") segregation unit Officer Adkins racially discriminated against him by calling him a "Nigger." ECF No. 1, p. 3. Plaintiff alleges that on November 7, 2010, Adkins slammed Plaintiff's hand in his food tray slot, causing swelling and bleeding, and refused to allow Plaintiff to clean his food tray slot as other inmates were permitted to do. *Id*. On November 21, 2010 Adkins threatened to withhold Plaintiff's kosher breakfast, and harassed and retaliated against him by filing a false Notice of Rule Violation. *Id*., pp. 3-4. On November 30, 2010 Adkins "attempted to close Plaintiff's hand in the food tray slot." *Id*., p. 4.

---

[1] Plaintiff alleges, for the first time, in his opposition, that Adkins threatened to withhold Plaintiff's Kosher meals as an act of retribution against Plaintiff and deliberately applied handcuffs too tight during one of the escorts to the showers. ECF No. 24, p. 4; Affidavit. These claims are not properly before the Court and will not be considered.

1

On January 24, 2011, Plaintiff alleges Adkins retaliated against him by escorting him to a dark, unlit, and filthy shower in retaliation for Plaintiff's having filed complaints against Adkins. *Id*. On January 30, 2011, Adkins, in retaliation for Plaintiff having filed complaints against him escorted Plaintiff to a broken shower that had only cold water. *Id*., p. 5. On May 15, 2011, Adkins escorted Plaintiff to a dark unlit shower in retaliation for Plaintiff's complaints. *Id*., p. 5.

Plaintiff indicates he filed administrative grievances regarding the matters. He states that Bobby Shearin and Adkins' unnamed supervisors on the 11 to 7 shift failed to properly address each complaint regarding Adkins' actions. *Id*.

Adkins avers that he did not use a racial epithet while providing Plaintiff food on November 3, 2010 and has never used a racial epithet against Plaintiff or any other inmate.[2] ECF 13, Ex. 4.

Adkins states that he has never purposefully closed Plaintiff's hand or any other inmates' hand in the feed up slot. If Plaintiff's hand was caught in the feed up slot on November 7, 2010, it would have been accidental. Adkins has no recollection of catching Plaintiff's hand in the slot on that date or any other date. *Id*.

Inmates, such as Plaintiff, housed on NBCI's segregation unit are permitted to hang a rag or cloth in their feed up slot as a signal to the officers that they want to be given an opportunity to quickly wipe the slot before it is closed. *Id*. If the inmate does not signal, the slot is quickly closed immediately after feed-up, as leaving the slot open poses safety and security concerns. Adkins further states that safety and security issues are created when inmates attempt to hold their feed-up slot open by placing their hands, arms or other objects in the slot in an attempt to breach the slot and keep it from being closed. Breaching a security slot creates safety and security issues in

---

[2] Plaintiff has provided affidavits from Inmate Reid who claims Adkins called Plaintiff a "bitch ass nigger" on November 21, 2010. ECF No. 24, Ex. 6, p. 2. Inmates Horton and Waters aver that Plaintiff was respectful to Adkins, who used profanity, and Plaintiff did not hold his slot or refuse to return his tray. *Id*., pp. 5-6.

any housing unit, but the issues are exacerbated when they occur on a segregation unit such as HU 1. *Id*., Ex. 4.

Adkins refutes Plaintiff's allegations regarding the events on November 21, 2010. *Id.,* Ex. 4. At approximately 4:30 a.m., Adkins was conducting feed up on Plaintiff's tier when Plaintiff held the slot open after he was given his breakfast meal. Adkins avers that when asked why he was holding the slot open, Plaintiff replied; "go fuck yourself!" *Id*.; Ex. 5, p. 18. Adkins ordered Plaintiff to remove his hand from the slot; however, Plaintiff ignored the order and refused to remove his hand. *Id*. Adkins continued conducting the feed up on the tier. When he unlocked the security slot on the cell next to Plaintiff's, Plaintiff yelled for the inmates in that cell to hold open their slot. Adkins was able, however, to finish the feed up without further incident. When Adkins was collecting trays, Plaintiff removed his arm from the slot to allow the slot to be closed, but stated that he was not going to return the tray. Adkins ordered Plaintiff to return the tray, and Plaintiff responded: "suck my dick, go fuck yourself!" *Id*. Adkins ordered Plaintiff to produce his identification card, but he refused.[3] Adkins told Plaintiff he would receive an infraction. Adkins identified Plaintiff by the B-Tier roster and wrote the infraction. Officer Yutzy served Plaintiff with the notice at approximately 6:00 a.m. that morning. Plaintiff refused to sign the notice. *Id*.; Ex. 5, p. 18.

Plaintiff's adjustment hearing was held on November 23, 2010. He pled to tampering with or destruction of security equipment and interfering with or resisting duties of staff, disobeying a direct lawful order, exhibiting or demonstrating insolence, disrespect or vulgar language. He was sentenced to a total term of 200 days disciplinary segregation. *Id*., p. 14.

---

[3] Plaintiff denies using inappropriate language, telling others to hold open their slot, refusing to turn in his tray, and refusing to provide his identification card. ECF No. 24, p. 18.

Adkins further avers that he made no effort on November 30, 2010, to close Plaintiff's hand in the feed up slot[4] and never attempted to close Plaintiff's hand or another inmate's hand in the slot. *Id*., Ex. 4. He aver that he has not retaliated against Plaintiff or any other inmate for any complaints filed against him. *Id*.

Adkins avers that at the time of the January 24, 2011 and May 15, 2011 shower incidents, staff assigned to segregation were required to insure approximately 128 inmates receive showers and recreation within a three hour time frame. *Id*. Ex. 4. If all regular showers are full and some inmates still desire a shower, one option is to escort them to one of the few single shows on the unit. Those single showers do not have lights in them; however, the inmates who use them are not in close proximity to other inmates, because the showers hold one inmate at time. Additionally, the doors of these showers are steel mesh across approximately two-third of the door, allowing some light from the tier into the shower. Adkins recalls that Plaintiff's cellmate at the time did not shower as frequently as Plaintiff. If Plaintiff was the only inmate from the cell wanting a shower, he would have been escorted to one of the single showers. In the case where only the single showers are available, the inmate is told that and while an inmate cannot pick and choose his shower location, he can refuse his shower.

Adkins avers that to the best of his recollection, Plaintiff did not refuse his shower and was willing to shower in the single shower on January 24, 2011. *Id*. The records of Plaintiff's segregation confinement show that he refused a shower on January 24, 2011. *Id*., Ex. 6. Plaintiff alleged in his Administrative Remedy Procedure Request ("ARP") concerning this event that he was taken to a dark shower and advised by Adkins that the showers with lights did not work. Adkins told Plaintiff that if he did not want to shower in the dark shower he could go back to his

---

[4] Plaintiff indicates that another inmate with a different vantage warned Plaintiff that Adkins was approaching Plaintiff's cell. He states that Adkins closed the slot without giving Plaintiff the opportunity to clean it. ECF No. 24, p. 21.

cell, which Plaintiff indicates he did. *Id.*, Ex. 17, pp. 1-2. He alleges that the lighted showers "bore no indication they were inoperative." *Id.*, p. 2.

Adkins further states that on January 30, 2011, he did not intentionally escort Plaintiff to a broken shower. Adkins has no specific recollection of the date in question but avers shat he never removed a sign indicating a shower was "out of service." Only maintenance staff place and remove signs indicating a shower needs repairs. Adkins further indicates that is generally known among the inmates on the unit that some showers work better than others because they use the showers; generally, that is not information known to custody staff, and specifically not known to him. Adkins denies escorting Plaintiff to a shower with only cold water or retaliating against him in any way, including by deliberately placing him in a cold shower. *Id*. Segregation records indicate Plaintiff did not receive a shower on January 30, 2011. *Id.*, Ex. 6. In his ARP concerning this incident, Plaintiff alleged that Officer Broadwater escorted him to a shower on another tier at the direction of Adkins. Id., Ex. 18, pp. 1-2. Plaintiff alleged this was the same dark shower as the January 24, 2011 incident. Plaintiff alleged that the shower was full of trash and the water did not warm. *Id*. p. 2. Broadwater was interviewed as a result of Plaintiff's complaint and stated that Plaintiff was taken to a single shower as the other two showers on the wing were being saved for the next double cell and the shower was in working condition. *Id.*, p. 3, 5. Adkins denied any knowledge of the event. *Id*. p. 6.

Adkins has no specific recollection of May 15, 2011. *Id.*, Ex. 4. He avers, however, that he has never retaliated against Plaintiff and would not have escorted Plaintiff to a dark shower in retaliation for having filed complaints against him. *Id*. Segregation records show Plaintiff did not receive a shower on May 15, 2011.[5] *Id.*, Ex. 7.

---

[5] Plaintiff disputes the accuracy of the shower records. ECF No. 24, p. 24. He also points to a variety of perceived inaccuracies in the segregation records, none of which are germane to this case. *Id*.

**Standard of Review**

A.  Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.  Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those

issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.  Supervisory Liability

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983).  Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984).  Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).  Plaintiff's claims against former Warden Bobby Shearin and the two unknown supervisors of Adkins is solely based on the theory of respondeat superior.  Plaintiff alleges that as supervisors aware of Plaintiff's myriad complaints against Adkins they had an affirmative duty to act.  Such a claim is insufficient as for the reasons stated below, Plaintiff has failed to establish that the conduct of Adkins posed a

pervasive and unreasonable risk of constitutional injury. Plaintiff's complaint against Shearin shall be dismissed.

B.     Due Process in Disciplinary Hearings/False Report

In prison disciplinary proceedings which bring the possible loss of good conduct credits, a prisoner is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff*, 418 U. S. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Plaintiff received all the process he was due. Although he disputes that he was not given timely advance written notice of the infraction, the record evidence shows that he was served by Officer Yutzy with the rule infraction. Plaintiff pled guilty at his hearing, waiving any claim that the notice was improper. He was permitted to attend the disciplinary hearing and to call witnesses on his own behalf. He also received written findings of the hearing officer. Moreover, the hearing officer's determination of guilt was based upon some evidence, i.e. review of Plaintiff's guilty plea, and the written record, upon which the hearing officer based determinations as to credibility and demeanor. Additionally, no good conduct credits were revoked as a result of the disciplinary infractions.

C.     ARP

To the extent Plaintiff alleges there were problems with the processing of his administrative remedy requests, his claim likewise fails. While the long standing rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure, *see Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994), with the passage of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), the issue is less clear. The PLRA requires

exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner. The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further clarification regarding exhaustion as a pleading requirement was announced by the United States Court of Appeals for the Fourth Circuit in *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674 (4th Cir. 2005), wherein the court held, "an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Id*. at 681. To the extent that a prisoner's attempts to exhaust the administrative remedy process are thwarted by prison officials' misconduct that evidence may be presented in response to the affirmative defense. *Id*. at 682. Thus, an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause. Assuming, *arguendo*, that Defendants did not satisfactorily investigate or respond to the Plaintiff's remedy requests in a timely fashion, Plaintiff's claim fails as he has not alleged, much less demonstrated, any injury as a result of any failure to process his ARPs.

D.   Verbal abuse

"[N]ot all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim. *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff laughed at inmate and threatened to hang him); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980) (no harm alleged

from claimed verbal harassment and abuse by police officer). Accordingly, Plaintiff's allegations that Adkins used racist language toward him fails to state a claim. Likewise, Plaintiff's allegation that Shearin and the unnamed supervisory staff failed to take corrective action as to the officer's unprofessional conduct fails to state a constitutional claim.

E.     Excessive Force

Adkins is entitled to summary judgment on Plaintiff's excessive force claim. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 599 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 34.

In support of his claim, Plaintiff avers that "[o]n November 7, 2010, during the course of breakfast meal distribution, Officer Adkins deliberately and maliciously slammed the food slot on Plaintiff's right hand as it was extended wiping food, milk and coffee from it." ECF No. 24, Ex. 5, p. 9. In his initial verified complaint, Plaintiff alleged his hand was slammed in the slot, "causing severe swelling, bleeding and injury that required medical attention." ECF No. 1, p. 3. *Id*. Plaintiff provides sick call slips dated November 7, 2010, December 29, 2010, January 17,

2011, January 23, 2011, January 26, 2011: and March 1, 2011, requesting medical attention for his swollen pointer and middle fingers; treatment for his right hand alleging it was slammed in the slot; and seeking acetaminophen, and ice for his left ankle (which was injured in a fall from his bunk) and right hand. *Id*., Ex. 2, pp. 2-7. Plaintiff was evaluated by Nurse Jenkins on November 10, 2010. It was noted that Plaintiff complained of pain in his right fingers due to his hand being slammed in door slot. Contrary to Plaintiff's averments, no swelling or cuts were observed. Mild redness was noted and Plaintiff offered subjective complaints of pain. *Id*., p. 7-8. X-rays were not needed and Plaintiff was provided ice (*id*.), refuting his averment that his injuries required medical attention. *Id*.

Adkins avers that he has no recollection of this event. There are no institutional records which demonstrate the event ever happened. Adkins avers that if he closed the slot on Plaintiff's hand it was done inadvertently. He explains the signal used on the tier for when inmates desire to clean their flood slot. Plaintiff does not indicate that he employed the signal, but rather seems to imply that he was cleaning the slot when the slot was closed.

While evidence of de minimis injury is insufficient to defeat Plaintiff's claim, the Court is mindful that the injury demonstrated by the medical records, "mild redness", is not indicative of a guard who maliciously "slammed" a slot on an unsuspecting inmate's hand. Plaintiff's injury was minor, unlike the injury he claimed in the initial filing of his Complaint, calling into question Plaintiff's veracity.[6] Plaintiff's documented injuries are simply not consonant with the slamming of the slot on his hand.

Although the Court may not make credibility determinations on summary judgment, *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir.1991), "[w]hen opposing parties tell two different stories,

---

[6] It is also of note that while Plaintiff has provided an affidavit from his cellmate and other inmates on the tier regarding the incident resulting in Plaintiff's rule infraction and other events complained of, the inmates' affidavits are noticeably silent as to the claim of excessive force.

one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  A court may permit an inmate's claim to go to the jury only if the evidence, viewed in the light most favorable to the inmate "supports a reliable inference of wantonness in the infliction of pain." *Stanley v. Hejirika*, 134 F. 3d 629, 634 (4th Cir. 1998).  The only other evidence of the event even occurring is Plaintiff's averment that Adkins acted maliciously.  His mere conclusory averment is insufficient to withstand the dispositive motion.  *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979).  As such Adkins is entitled to summary judgment on Plaintiff's excessive force claim.

F.   Equal Protection

Plaintiff alleges Adkins denied him the opportunity to clean his fee up slot as other inmates are permitted to do.  The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U. S. 432, 439 (1985) (citation omitted).  In cases where no suspect criterion such as race is involved, the proper inquiry is whether the statute or regulation serves a legitimate state interest and whether the challenged classification is rationally related to it.  *See Moss v. Clark*, 886 F. 2d 686, 690 (4th Cir. 1989).   Even in the case where a suspect class is involved prison regulations must only meet a test of reasonableness; they are not subjected to strict scrutiny. *See Washington v. Harper*, 494 U.S. 210, 223 (1990) (rule of *Turner v. Safley* that regulations need only be reasonably related to legitimate penological interest applies beyond First Amendment context); *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Adkins avers that inmates are to hang a cloth to signal their desire to clean their slot.  ECF No. 13, Ex. 4.  Plaintiff failed to do so.  Plaintiff has failed to

demonstrate he was treated differently than any other segregation inmate who failed to follow the protocol set forth for cleaning the spot. Moreover, Plaintiff's bald allegations of discriminatory intent, as offered here, are insufficient to state an equal protection claim. *See Beaudette v. City of Hampton*, 775 F. 2d 1274 (4th Cir. 1975).

G.   Conditions of Confinement

To the extent Plaintiff's claims are construed as a conditions of confinement claim, they too are subject to dismissal. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010), quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002). Conduct is not actionable under the Eighth Amendment unless it

transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003). Plaintiff has not alleged, much less demonstrated that he suffered any harm as a result of the being provided a dark, cold and/or dirty shower on three occasions.[7] As such, Adkins is entitled to summary judgment on his conditions of confinement claim.

H.  Violation of DOC Policy

To the extent Plaintiff alleges Defendants violated their own policies and procedures in processing his ARPs, providing him showers, or in any other manner, his claim is without merit. State regulations do no provide a basis for a due process violation. *Weller v. Dept. of Soc. Services*, 901 F.2d. 387 (4th Cir. 1990); *see also Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("[i]f the state law grants more procedural rights than the

---

[7] The absence of an injury alone is enough to defeat Plaintiff's claim. *See* 42 U.S.C. § 1997e(e) (barring inmate lawsuits where there is no showing of physical injury).

Constitution would otherwise require, a state's failure to abide that law is not a federal due process issue").

I. Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the Plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

While Plaintiff points to a pattern of conduct by Adkins which he baldly alleges was retaliatory, Plaintiff has failed to state a claim and/or show injury or adversity as a result of the alleged conduct. Adkins flatly denies Plaintiff's allegations of retaliatory conduct. Plaintiff "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that

the protected conduct was a substantial or motivating factor in the prison officials' decision."

*Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). Plaintiff has failed to meet this burden.

## Conclusion

The dispositive motion filed on behalf of Defendants will be granted.   A separate Order follows.

March 3, 2015

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE